# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

IN RE RIDGECREST HEALTHCARE, INC.,

    Debtor,

_____

CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES,

    Appellant,

v.

HOWARD M. EHRENBERG, as Chapter 7 Trustee,

    Appellee.

_____

Case No. CV 17-6708 FMO

(BK Case No. 13-33058 BR)

**ORDER RE: BANKRUPTCY APPEAL**

Having reviewed and considered all briefing and exhibits filed with respect to the appeal of the Bankruptcy Court's Order of August 24, 2017, (Bankruptcy Docket ("BK Dkt.") 491), filed by appellant California Department of Health Care Services ("appellant" or "DHS"), the court finds that oral argument is not necessary to resolve the appeal, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## **BACKGROUND**

On September 16, 2013, debtor Ridgecrest Healthcare, Inc. ("debtor") filed a petition for relief under the provisions of Chapter 11 of Title 11 of the United States Code. It continued to

operate the skilled nursing facility located in Ridgecrest, California as a debtor-in-possession until the appointment of Howard M. Ehrenberg as the Chapter 11 (now Chapter 7) trustee ("appellee" or "Trustee") on April 17, 2014.[1]

On March 31, 2014, DHS filed a timely proof of claim pursuant to 11 U.S.C. § 502,[2] based on debtor's unpaid pre-petition Quality Assurance Fees ("QA Fees"). (See Claim 10-1) (asserting an unsecured nonpriority claim of $192,793.85). In accordance with Fed. R. Bankr. P. 3001(a), Claim 10-1 was submitted on Official Form B10 and accompanied by a supporting declaration under penalty of perjury from Brian Clausse, ("Clausse Decl."), an analyst with DHS's Quality Assurance Fee Unit, and a spreadsheet setting forth DHS's calculation methodology. Claim 10-1 was superseded by DHS's first amended proof of claim, filed on February 12, 2015. (See Claim 10-2) (asserting a priority claim of $446,609.20 for unpaid government taxes or penalties pursuant to § 507(a)(8)).[3] On September 2, 2015, DHS filed a seconded amended proof of claim. (See Claim 10-3) (superseding Claim 10-2 and asserting a priority claim of $432,250.01 for unpaid government taxes or penalties pursuant to § 507(a)(8)).

On August 17, 2015, the Trustee filed an objection to Claim 10-3, arguing that it should be disallowed because it was not an excise tax and that DHS failed to "me[e]t its burden that the

---

[1] The facility was eventually sold, effective July 31, 2014, and on September 4, 2014, debtor's Chapter 11 petition for reorganization was converted to one for liquidation under Chapter 7.

[2] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code and all subsequent "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[3] Claim 10-2 was accompanied by the Clausse Declaration, which explained the basis for Mr. Clausse's personal knowledge of DHS's calculation methodology and the relevant variables forming the basis for debtor's unpaid QA Fees. See Fed. R. Evid. 602 (personal knowledge requirement); Fed. R. Evid. 901 (authentication requirement). DHS's amended claim was necessary because the Trustee's counsel requested that DHS apply Medi-Cal payments owing to debtor as "recoupment" to post-petition debt (allocated greater priority as a § 502 administrative expense) instead of pre-petition debt. (See Dkt. 13-1, ER at 90) (Declaration of John Beshara, Chief of DHS's QA Fee Unit, General Collections Section). DHS agreed to do so, refunding $178,522.33 to debtor's estate and withdrawing its § 502 administrative expense claim, (Claim No. 16), of $315,364.32. This resulted in a substantial increase in pre-petition QA Fees owed, (Claim No. 10-2), from $192,793.85 to $446,609.20. (See Dkt. 13-1, ER at 90).

Claim should be allowed as a priority unsecured claim." (BK Dkt. 407, "Motion" at 9). The Motion was granted in part and denied in part, and Claim 10-3 was disallowed as a priority claim but allowed as a general unsecured non-priority claim. (See BK Dkt. 423, "First Claim Objection Order"). DHS successfully appealed the First Claim Objection Order, and the court reversed and remanded the matter for further proceedings. (See BK Dkt. 459).

On remand, the bankruptcy court held that QA Fees were excise taxes, but were not "on a transaction" and therefore not entitled to priority. (See BK Dkt. 491, Bankruptcy Court's Order of August 24, 2017, at 12). DHS timely appealed, (see BK Dkt. 504, Notice of Appeal), and a stay of proceedings pending appeal was granted. (See BK Dkt. 529, Bankruptcy Court's Order of October 25, 2017).

## **LEGAL STANDARD**

This court has jurisdiction pursuant to 28 U.S.C. § 158. See 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges[.]"); In re Fowler, 394 F.3d 1208, 1211 (9th Cir. 2005) (holding that a bankruptcy court's determination of priority is a final appealable order pursuant to 28 U.S.C. § 158). When reviewing a bankruptcy court's decision, a "district court functions as an appellate court . . . and applies the same standards of review as a federal court of appeals[.]" In re Crystal Props., Ltd., 268 F.3d 743, 755 (9th Cir. 2001) (internal quotation marks omitted). "A district court reviews a bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code de novo." In re Orange Cty. Nursery, Inc., 439 B.R. 144, 148 (C.D. Cal. 2010). Factual findings are reviewed for clear error, and the court "must accept the bankruptcy court's findings of fact unless, upon review, the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." In re Greene, 583 F.3d 614, 618 (9th Cir. 2009).

**DISCUSSION**

As noted above, on remand, DHS's claim was again disallowed, this time on the basis that even though the QA Fee was an excise tax, it was not one imposed "on a transaction" for purposes of § 507(a)(8)(E).[4] (See BK Dkt. 491, Bankruptcy Court's Order of August 24, 2017, at 12; see also Dkt. 6, Statement of Issue on Appeal at 1). DHS challenges this determination, arguing that "[t]he bankruptcy court correctly found the QA Fee to be an excise tax" but "mistakenly concluded that the monthly QA Fee is imposed on a particular facility's net revenue for the month." (Dkt. 12, Appellant's Opening Br. at 3). Consequently, DHS asserts, the bankruptcy court's "ruling must be reversed because the uncontroverted facts show that the QA Fee is not based upon a facility's net revenue" and that "the QA Fee rate is calculated based upon all the revenue of all the facilities subject to the QA Fee in [California.]" (Id. at 9).

The Trustee responds that "the QA Fee, if an excise tax, is clearly and unequivocally not 'on a transaction[.]'" (Dkt. 15, Appellee's Br. at 15) (capitalization omitted). Because "[s]killed nursing facilities provide long-term care to their patients, and do[] not engage in one-time or discrete transactions with their patients[,]" the Trustee asserts that "QA Fees are not assessed on any discrete activity or transaction involving any particular patient, care or service." (Id. at 19). According to the Trustee, DHS "wants to squeeze the QA Fee into an excise tax 'on a transaction,' but fails to identify what the transaction is." (Id.). The Trustee's assertions are unpersuasive.

During the hearing on the claim objection following remand, DHS's counsel explained that QA Fees were imposed on a "per bed"[5] basis:

---

[4] In relevant part, § 507(a)(8)(E) provides that eighth priority is accorded to: "an excise tax on – (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition."

[5] Put differently, it is the aggregate monthly sum of patient beds occupied on a daily basis. For instance, assume that for each of the four weeks in February there are 11 occupied patient beds on Monday, 12 on Tuesday, 13 on Wednesday, 14 on Thursday, 15 on Friday, 16 on Saturday, and 17 on Sunday. The aggregate weekly total of "patient bed census days" would be 98 (11 + 12 + 13 + 14 + 15 + 16 + 17 = 98). Multiplied by four, the total number of transactions in February would be 392.

4

| | |
|---|---|
| 1 | MR. WANG [DHS's counsel]: . . . the QA fee is charged on a per bed at a |
| 2 | facility – occupied bed at a facility in a month. |
| 3 | THE COURT: So it's -- and it's per bed per month? |
| 4 | MR. WANG: Per bed per month. |
| 5 | THE COURT: Per month. Okay. |
| 6 | MR. WANG: Okay. |
| 7 | THE COURT: And that doesn't vary? |
| 8 | MR. WANG: That varies throughout the month. So -- so that formula doesn't |
| 9 | vary but the actual amount varies. |
| 10 | THE COURT: Okay. |
| 11 | MR. WANG: So it -- for example, at a facility that has 50 beds for the month |
| 12 | of January 2017 perhaps 50 beds get occupied. In February 20 beds gets |
| 13 | occupied. So that multiplier is multiplied by the number of beds occupied for |
| 14 | the month. |
| 15 | THE COURT: Occupied. Okay. |

(BK Dkt. 519, January 4, 2017, Hearing Tr. at 23-24).

DHS's characterization of QA Fees as being imposed on a "per bed, per patient day" basis was essentially uncontested. Indeed, the Trustee agreed with this characterization. (See BK Dkt. 480, Trustee's Opening Supp. Br. at 4) (describing QA Fees as "recurring monthly charges which are based on a facility specific annual rate, multiplied by the number of occupied beds/residents per day each month"). Nonetheless, the bankruptcy court found that QA Fees were not levied "on a transaction," reasoning as follows:

> QA Fees are not <u>based on the number of</u> meals, <u>beds</u>, changes of clothing, or any other service <u>provided to residents</u>. QA Fees are not assessed when a new resident enters a facility. Rather, the terms of the legislation provide – and DHS's proof of claim makes clear – that QA Fees are recurring fees based on a skilled nursing facility's net revenue.

(BK Dkt. 491, Bankruptcy Court's Order of August 24, 2017, at 12) (emphasis added).

5

The court respectfully disagrees with bankruptcy court's legal interpretation of the relevant California law. See Marsh v. J. Alexander's LLC, 905 F.3d 610, 618 (9th Cir. 2018) (en banc). The relevant California statute states that "[t]he amount of the uniform quality assurance fee to be assessed per resident day shall be determined based on the aggregate net revenue of skilled nursing facilities subject to the fee[.]" Cal. Health & Safety Code § 1324.21(b) (emphasis added). As both DHS and the Trustee agreed that the QA Fee was calculated based on the number of beds per day provided to a nursing facility's residents, (see BK Dkt. 480, Trustee's Opening Supp. Br. at 4), the bankruptcy court erred in concluding that "QA Fees are not based on the number of . . . beds . . . provided to residents."[6] As DHS correctly notes, the "QA Fee . . . is a daily per bed charge" that is highly "analogous to the bed tax imposed by the hospitality industry[] at hotels and motels." (Dkt. 12, DHS Opening Br. at 14).

Moreover, the court's conclusion is strongly supported by the First Circuit's decision in Boston Regional v. Massachusetts Div. of Health, 365 F.3d 51 (1st Cir. 2004), which, as DHS noted, is a factually "indistinguishable" case involving similar issues of law and expounded on those similarities. (See BK Dkt. 410, Creditor California Department of Health Care Service's Opposition[] at 10; BK Dkt. 519, January 4, 2017, Hearing Tr. at 28, 42-43). While Boston Regional is not binding on this court or the bankruptcy court, it is highly persuasive authority for a number of reasons. It concerned "materially indistinguishable" facts – a state claim for unpaid health care provider taxes imposed to finance the state's share of Medicaid costs – and resolved a virtually identical question of law. See Boston Regional, 365 F.3d at 53 ("At issue in this appeal is whether amounts owing by a debtor hospital under Massachusetts general law, chapter 118G, section 18, to a state fund known as the Commonwealth's Uncompensated Care Pool are properly considered to be 'excise taxes' enjoying priority in bankruptcy under 11 U.S.C. § 507(a)(8)(e).").

---

[6] For the same reasons, the court finds unavailing the Trustee's argument that DHS failed to identify the discreet transaction involved. (See Dkt. 15, Appellee's Br. at 19; BK Dkt. 491, Bankruptcy Court's Order of August 24, 2017, at 12).

The QA Fee at issue here[7] and the Massachusetts tax[8] in Boston Regional were both enacted as part of a state plan to receive federal matching funds (or federal financial participation) pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq. (also known as the Medicaid Act). The First Circuit resolved the question of priority treatment of the state's claim under the Bankruptcy Code by applying the standard set forth in the Ninth Circuit's decision in In re Lorber Indus. of Cal., Inc., 675 F.2d 1062, 1066 (9th Cir. 1982). See Boston Regional, 365 F.3d at 58. In other words, having conducted a de novo review of the bankruptcy court's legal determination, the court is persuaded that the approach set forth in Boston Regional is the correct one.[9] In short, DHS's QA Fee claim should have been allowed as a priority unsecured claim pursuant to 11 U.S.C. § 507(a)(8).

**This order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. The Bankruptcy Court's Order of August 24, 2017, (Bankruptcy Document No. 491) is **reversed**, and the matter is remanded with instructions to allow DHS's proof of claim for Quality

---

[7] See Cal. Health & Safety Code § 1324.27 ("The department shall request approval from the federal Centers for Medicare and Medicaid Services for the implementation of this article.") (referring to §§ 1324.20 to 1324.30, Article 7.6, titled "Skilled Nursing Facility Quality Assurance Fee"); Cal. Welf. & Inst. Code § 14126.022(o) ("The department shall seek necessary approvals from the federal Centers for Medicare and Medicaid Services to implement this section. The department shall implement this section only in a manner that is consistent with federal Medicaid law and regulations, and only to the extent that approval is obtained from the federal Centers for Medicare and Medicaid Services and federal financial participation is available.").

[8] See Mass. Gen. Laws ch. 118G, § 18 (effective through June 30, 2001) ("The Uncompensated Care Trust Fund shall consist of all amounts paid by acute hospitals and surcharge payors for the purposes of the uncompensated care pool pursuant to this section and section 18A[.]")

[9] The court is cognizant of the notion that, "[a]bsent a strong reason to do so, [the Ninth Circuit] will not create a direct conflict with other circuits." United States v. Mercado-Moreno, 869 F.3d 942, 955 (9th Cir. 2017) (internal quotation marks omitted). See, e.g., Fang Lin Ai v. United States, 809 F.3d 503, 507 (9th Cir. 2015) (noting the existence of persuasive authority from the Federal Circuit "in a materially indistinguishable case" and adopting the same disposition).

Assurance Fees in the amount of $432,250.01 as a priority unsecured claim pursuant to 11 U.S.C. § 507(a)(8).

2. Judgment shall be entered accordingly.

Dated this 29th day of March, 2019.

/s/<br>
Fernando M. Olguin<br>
United States District Judge